**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>MATTHEW P. FARO and<br>CHERYL A. FARO,<br><br>                    Debtors | Chapter 13<br>Case No. 09-16896-FJB |

**MEMORANDUM OF DECISION ON
TRUSTEE'S OBJECTION TO DEBTORS' CLAIMS OF EXEMPTION,
TRUSTEE'S OBJECTION TO CONFIRMATION OF PLAN, AND
OBJECTION OF BAC HOME LOANS SERVICES TO CONFIRMATION OF PLAN**

This case is before the court on three related matters pertaining to confirmation of the plan of chapter 13 joint debtors Matthew and Cheryl Faro ("the Debtors"): an objection by the chapter 13 trustee, Carolyn Bankowski ("the Trustee"), to the debtors' claim of exemption as to cash; and objections by the Chapter 13 Trustee and by BAC Home Loans Servicing L.P. ("BAC") to confirmation of the debtors' chapter 13 plan. For the reasons set forth below, the court concludes that the exemption must be disallowed in part and that the plan cannot be confirmed as presently proposed.

**Trustee's Objection to Claim of Exemption**

On their schedule of claims of exemption, as amended, the Debtors have claimed as exempt their interests in cash in certain checking and savings accounts totaling $3650. Their schedule of exemptions indicates that this sum is claimed as exempt under two Massachusetts statutes, G.L. c. 246, § 28A and G.L. c. 235, § 34, without elaboration. The Trustee objected, stating that G.L. c. 246, § 28A permits an exemption of no more than $500 per debtor, for a total of only $1,000. In response to the Trustee's objection, the Debtors explained that their total claim includes four components: (1) under G.L. c. 246, § 28A, $500 for each debtor, for a total of $1,000; (2) under G.L. c. 235, § 34(Fifteenth), an additional $125 for each debtor, for a total

of $250; (3) under G.L. c. 235, § 34(First), "the amount each month, not exceeding seventy-five dollars, reasonably necessary to pay for fuel, heat, water, hot water, and light for himself and his family," for a total of $1,800, it being the Debtors' position that each Debtor is separately entitled to this exemption and that the exemption is available each month for twelve months; and (4) under G.L. c. 235, § 34 (Seventh), "[p]rovisions necessary and procured and intended for the use of the family, or the money necessary therefor, not exceeding three hundred dollars in value," for a total of $600 for two debtors.

In further response, the Trustee indicates that she now does not object to the first two components, for a total of $1,250, but still objects to the third and fourth. As to these she articulates the following objections. First, she argues that the Debtors were obligated by F. R. BANKR. P. 4003(a) to specify each item they were claiming as exempt, but they failed to cite the specific paragraphs of G.L. c. 235, § 34 that are applicable to cash for utilities and cash for provisions and they failed to indicate that any portion of the cash was being claimed for utilities and for provisions. Having failed in this basic task, she contends, they have not properly even made a claim of exemption under paragraphs First and Seventh of G.L. c. 235, § 34, and therefore they may not now justify their claim under those subsections.

As to this first basis of objection, the court disagrees. Rule 4003(a) requires only that "a debtor shall list the property claimed as exempt." Here the Debtors did that and cited the relevant statutes. It would have been better practice had they also specified the applicable subsections and the amounts they were claiming under each, but they have now done that, albeit not on their schedule of exemptions. In addition, denial of the exemption on this basis would only be met with amendment of the schedule of exemptions and another round of objections to arrive back precisely to where we are, only poorer and later. The Trustee also argues that the Debtors are bound by their exemptions as originally claimed, without possibility of amendment. The Court rejects this contention, too. A debtor may amend its schedule of exemptions. F. R. BANKR. P. 1009(a) ("A . . . schedule . . . may be amended by the debtor as a

2

matter of course at any time before the case is closed.").

Next the Trustee argues that the cash allowances in paragraphs First and Seventh of G.L. c. 235, § 34 for utilities and provisions cannot be used to increase the total cash allowance under § 34 beyond the $125 per debtor that is expressly permitted in paragraph Fifteenth of the same statute. In other words, the Trustee's position is that paragraph Fifteenth serves as a cap on all cash that may be exempted under G.L. c. 235, § 34. The Trustee offers no authority for this position. There appears to be no case law on the issue.

The Court rejects this interpretation of the statute for three reasons. First, the statute itself is a mere list. It begins with the words: "[t]he following property of the debtor shall be exempt from seizure on execution." G.L. c. 235, § 34. It follows that all items listed thereafter are exempt. The statute does not use a disjunctive "or" to indicate that a debtor must choose between any of its items. The natural reading of § 34 is as a list of diverse items, any of which a debtor may exempt. It would be silly to construe it as, for example, permitting a debtor to exempt a sewing machine or an automobile but not both, food or heating oil but not both. Therefore a debtor may take as many of the enumerated exemptions as he or she qualifies for. Second, paragraph Fifteenth does not in any way state that its constitutes a limit on all cash that may be exempted under § 34. Third, the reading of paragraph Fifteenth as imposing a $125 cap is logically inconsistent with paragraph Seventh, which expressly authorizes the exemption of cash necessary for certain provisions "not exceeding three hundred dollars in value." G.L. c. 235, § 34 (Seventh). The court therefore reads § 34 to permit a debtor to claim any and all listed items for which he or she may qualify, even where one is undesignated cash and the other is cash for a designated purpose, and that paragraph Fifteenth is not a limit on cash exemptible under the statute as a whole.

The Trustee asserts no further arguments against the Debtors' claim of $300 each under G.L. c. 235, § 34 (Seventh) as cash necessary for provisions, and therefore I hold that the Debtors are entitled to this exemption. In further opposition to the Debtors' remaining claim of

3

$1800 under paragraph (First), the Trustee takes the position that the Debtors should be limited to one month's allowance, for a total of $150, not the twelve months' allowance they have claimed. For this position the Trustee advances two arguments.

The first, that "there is nothing in the statute that specifically provides that the $75.00 is a monthly allowance," is belied by the statute itself, which expressly allows to the debtor "the amount *each month*, not exceeding seventy-five dollars, reasonably necessary to pay for fuel, heat, water, hot water, and light for himself and his family." G.L. c. 235, § 34 (First) (emphasis added). The phrase "not exceeding seventy-five dollars" directly modifies "the amount *each month*." It follows that paragraph First contemplates a repeating, monthly allowance, not exceeding $75 in any given month. The statute does not specify how many months the allowance shall continue, a question that remains to be answered, but it expressly contemplates a monthly allowance.

Second, the Trustee argues that, even if § 34 can be read as allowing $75 per month, the Debtors are not entitled to this amount or any portion of it because, in the calculation of the amount of monthly income they must devote to their chapter 13 plan, they already reserve more than $75 per month of their postpetition income to pay for utilities.[1] In other words, the Trustee is arguing that the Debtors are "double-dipping." If they are exempting $75 per month to pay on the theory that these are necessary to pay for utilities, then they must use those exempted funds to pay for utilities, and that use would free up an equal amount of postpetition income for payment to creditors under their chapter 13 plan. Conversely, if the Debtors can pay for utilities with postpetition income, they cannot show that prepetition savings are necessary to make the same payments.

The Court agrees with this argument. The Debtors' schedules of current income and current expenditures show net disposable income of only $111 per month: average monthly

---

[1] In fact, Debtors' Schedule J, their schedule of current expenditures, shows aggregate monthly expenditures of $450 for the utilities covered by § 34(First): fuel, heat, water, hot water, and light.

4

income of $5,526 minus average monthly expenses of $5415. These expenses include $450 per month for the utilities for which § 34(First) is intended to provide. The Trustee does not challenge the Debtors' calculation of their disposable income. She merely contends that, in their proposed plan, the Debtors' required monthly contribution already reflects a repeating monthly allowance of $450 to pay for utilities. I need not reach the issue of whether the Debtors' plan would require amendment if this exemption were permitted. It is enough to point out that § 34(First) requires a showing that the claimed funds are "reasonably necessary to pay for" the enumerated utilities, but that, in view of the availability of postpetition income to cover the same expenses, the Debtors cannot establish the requisite necessity.

In opposition to this argument and in defense of the claimed exemption, the Debtors argue that exemptions should be construed to afford the debtors a fresh start, and, as evidence of legislative intent, they point to pending Massachusetts legislation that, if approved, would substantially expand the exemption. These appeals are unavailing. The pending legislation is not law and does not govern this case; and nothing in the Bankruptcy Code permits the Court to expand a debtor's right to a fresh start beyond the allowances specifically made for that purpose in the Code and the exemptions it permits. For inability to establish its necessity, the claim of exemption under § 34(First) must therefore be disallowed in its entirety.

In summary, the Court will allow the claim of exemption as to cash and savings in the total amount of $1,850— $500 for each debtor under G.L. c. 246, § 28A, $125 each debtor under G.L. c. 235, § 34(Fifteenth), and $300 for each debtor under G.L. c. 235, § 34 (Seventh)— and disallow the further $1,800 claimed under G.L. c. 235, § 34 (First).

**Trustee's Objection to Confirmation of Amended Chapter 13 Plan**

The Trustee objects to confirmation of the Debtors' Amended Chapter 13 Plan on the basis that it does not meet the "best interest of creditors test" set forth in 11 U.S.C. § 1325(a)(4). This subsection requires, as a condition of plan confirmation, that "the value, as of the effective

5

date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." The Trustee points out that, according to the liquidation analysis that the Debtors submitted in support of their plan, unsecured creditors would receive $3,456 in a chapter 7 liquidation, and that this amount must be increased by $1,800 on account of the above disallowance of part of a claimed exemption, yet the Debtors propose to pay their unsecured creditors nothing at all.[2] The Debtors respond that the amount that would be available for unsecured creditors in a chapter 7 liquidation would constitute less than 1% of the $163,400 in unsecured debt in this case, and that the difference is *de miminis*.

The Court will sustain the Trustee's objection on the basis that the plan does not satisfy § 1325(a)(4). If the necessary distribution to unsecured creditors is indeed *de minimis*, as the Debtors contend, they will have no trouble paying it—and in doing so may avoid adding insult to injury.

**Objection of BAC Home Loans Servicing to Confirmation of Amended Chapter 13 Plan**

BAC Home Loans Servicing L.P., the holder of the first mortgage on real property that constitutes the Debtors' principal residence, objects to the treatment of its claim in the plan. BAC argues that the proposed modification of its claim in the plan violates the 11 U.S.C. § 1322(b)(2), which prohibits modification of the rights of the holder of a secured claim that is secured "only by a security interest in real property that is the debtor's principal residence." The Debtors respond that although the real property in question is indeed their principal residence, it is also their place of business. They state that they have conducted an on-line seafood sales business out of their home for 11 years, they operate the business out of the basement of their

---

[2] The Trustee further contends that the Debtors' liquidation analysis may understate the likely distribution in other ways. The Court need not reach those issues to resolve this objection.

6

split-level home and use the garage for storage of packaging. They estimate that the business occupies fully half of their home. They argue that on account of this business use, the property is not solely their principal residence, and therefore BAC's secured claim is not protected from modification by § 1322(b)(2).

The issue presented is whether and under what circumstances a debtor's conduct of a business or trade from his or her principal residence will remove a claim secured by that residence from the antimodification clause. The answer to that question is unclear and in any event would require an evidentiary hearing. However, in view of other defects in the treatment of this claim, the court need not now decide the issue. Specifically, the plan's treatment of BAC's secured claim is so confusing and unclear that it is impossible to know what the Court is being asked to approve. In Part IIA of the plan, the Debtors indicate that they will pay the $30,000 arrearage on BAC's secured claim through the plan,[3] but then they budget only $3,600 for that purpose without explanation. Elsewhere, they indicate that they seek to modify BAC's mortgage "by vacating arrears or by placing arrears on back end of mortgage (without interest),"[4] and here they specify that the amount of claim to be paid through plan is $3,600.[5] This further language is at odds with the earlier indication that the Debtors were proposing to *pay* the arrearage through the plan. In addition, it proposes two possible, alternative treatments: "vacating arrears" or "placing arrears on back end of mortgage (without interest)." Which would be effected by confirmation of the plan? The plan does not specify. Even if it did so specify, the alternatives are not articulated with clarity sufficient to determine what they mean or how precisely they would be carried into effect. The first requirement of any plan is that its

---

[3] The plan indicates that $30,000 is an estimate. The plan proposes to pay the arrearage whatever its amount. BAC's proof of claim quantifies the prepetition arrearage at $35,422.66.

[4] With a footnote, they add that they will be filing Motion to Modify Mortgage and bringing an adversary proceeding against BAC, but to date Debtors have done neither.

[5] BAC's proof of claim is for $278,082, which amount the Debtors concede is fully secured. Nowhere do the Debtors explain how they arrive at the figure of $3,600.

7

proposed treatment of the various claims be clear and intelligible. The Debtors must in any event file a further amended plan to address the Trustee's sustained objection. In doing so, they should clarify their proposed treatment of BAC's claim.

**<u>Conclusion</u>**

For the reasons set forth above, the court will by separate order (i) sustain the Trustee's Objection to Claim of exemption as to $1,800 of the amount claimed and overrule it as to the balance of $1,850, (ii) sustain the Trustee's objection to confirmation, and (iii) order the Debtors to file a Second Amended Plan within 14 days of the date of this order.

Date: July 13, 2010

_____
Frank J. Bailey
United States Bankruptcy Judge